# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| **WASEEM DAKER,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **VS.** | : | |
| | : | **CIVIL No: 5:15-CV-88-CAR-CHW** |
| **Commissioner HOMER BRYSON,** | : | |
| ***et al.,*** | : | |
| | : | |
| **Defendants** | : | |

_____

## ORDER

Presently pending before the Court are a number of motions filed by *pro se* Plaintiff Waseem Daker and the Report and Recommendation filed by the United States Magistrate Judge on December 29, 2017 (ECF No. 64). For the following reasons, the Court will (1) deny Plaintiff's motion for appointed counsel (ECF No. 69); (2) deny Plaintiff's motions to recuse Magistrate Judge Weigle (ECF Nos. 66, 76); (3) deny Plaintiff's motion to access authorities (ECF No. 72); (4) deny Plaintiff's motion for copies (ECF No. 75); and (5) deny Plaintiff's pending "emergency" motion (ECF No. 63). Plaintiff's motion for leave to proceed *in forma pauperis* in Case Number 5:17-cv-188 (ECF No. 62) shall also be terminated as moot. The Court will construe Plaintiff's request for a "stay" of the "time to object to the R&R while his other motions are pending," as a motion to extend the time in which to file objections and provide Plaintiff with an additional **FOURTEEN (14) DAYS** from the date of this Order to supplement his Objections. *See* Mot. Access Authorities 2, ECF No. 72, The Court **DEFERS** ruling

on Plaintiff's remaining pending motions and the Magistrate Judge's Report and Recommendation until the time for supplementation has expired.

## I.    Motion to Appoint Counsel

Plaintiff has filed a motion for appointed counsel (ECF No. 69). In his motion, Plaintiff requests appointment of counsel to either (1) generally assist him "for the whole case" or (2) to assist him "in drafting and filing an amended complaint[.]" Mot. Appoint Counsel 1, ECF No. 69. Under 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (per curiam). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). In deciding whether legal counsel should be provided, the Court considers, among other factors, the merits of Plaintiff's claims and the complexity of the issues presented. *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989) (en banc).

Plaintiff first argues that this case is sufficiently complex to warrant appointment for counsel. In support of this contention, Plaintiff cites to a similar case pending before the Court involving a prisoner's challenge to Georgia Department of Corrections ("GDC") grooming policies. *See* Mot. Appoint Counsel 1-2, ECF No. 69. While Plaintiff correctly observes that counsel was appointed for the plaintiff in that case, counsel was appointed on appeal, at a much later stage in the litigation and long after the complaint had been screened and served on defendants. *See* Order Appointing Counsel, ECF No. 138 in *Smith v. Owens*, Case No. 5:12-cv-00026-WLS-CHW (M.D. Ga. June

17, 2016) (case originally filed Jan. 24, 2012). Plaintiff also cites to another case in which he was appointed counsel, *Daker v. Head*, Case No. 5:14-cv-00138-MTT-CHW (M.D. Ga. Apr. 4, 2014). The procedural posture of that case also differs from that of the above-captioned case: in that case, the Eleventh Circuit appointed counsel for Plaintiff, on appeal, and after this Court acknowledged that Plaintiff had a good faith basis for taking an appeal based on the Eleventh Circuit's ruling in *Daker v. Comm'r, Ga. Dep't Corr.*, 820 F.3d 1278 (11th Cir. 2016). *See* Order Appointing Counsel, *Daker v. Head*, No. 14-13257 (11th Cir. Nov. 17, 2017). Plaintiff's comparisons are thus inapt and fail to support his motion.

Plaintiff also argues that his purported lack of access to legal materials and his previous pleadings warrants the appointment of counsel in this case. But "[t]he key" in determining whether appointed counsel is warranted "is whether the *pro se* litigant needs help in presenting the essential merits of his position to the court." *Nelson v. McLaughlin*, 608 F. App'x 904, 905 (11th Cir. 2015) (per curiam). In this case, Plaintiff's numerous filings demonstrate his ability to present the merits of his position to the Court. *See id.* (holding that court did not abuse its discretion in denying appointed counsel where prisoner "articulated his claims for relief in his complaint and filed several responsive pleadings and motions before the district court in which he accurately cited the essential facts, legal arguments, and relevant law"). Furthermore, as noted below, the Court finds that Plaintiff's allegations that he has been denied access to legal materials are not specific (or credible) enough to merit relief.

In sum, Plaintiff has not established that "exceptional circumstances" exist to justify appointment of counsel at this time. Plaintiff's motion to appoint counsel (ECF No. 69) is accordingly **DENIED**.

## II.    Motion for Recusal

Plaintiff has also filed two motions seeking the recusal of Magistrate Judge Weigle from this case. In support of his motions, Plaintiff again compares his case to a similar pending case, contending that in that case, Judge Weigle permitted the claims of the *pro se* prisoner challenging the same GDC grooming restrictions "to proceed as non-frivolous or malicious, appointed counsel, and allowed discovery, while recommending that Plaintiff's claims be dismissed as frivolous or malicious." Mot. Recusal 2, ECF No. 66. Plaintiff thus contends that Judge Weigle "has demonstrated a 'double standard,' hypocrisy, and a refusal to 'play by his own rules[.]'" *Id.* at 2-3. Plaintiff concludes that "the only discernable explanation for Magistrate Weigle's conflicting and inconsistent handling" of the two cases is that Judge Weigle has "a bias against Plaintiff and is looking for any excuse he can find to rubberstamp-dismiss any and all of Plaintiff's cases." *Id.* at 3. Plaintiff further alleges that Judge Weigle maintains "an overall tone" that shows he "has a deep-seated bias, prejudice, hostility, and antagonism against Plaintiff; is <u>not</u> taking any of Plaintiff's claims seriously . . . , and has a proclivity to rubber-stamp-dismiss or-deny anything Plaintiff files." *Id.* at 4-5.

28 U.S.C. § 455 provides the standard for when a judge, justice, or magistrate judge must disqualify himself from a particular proceeding.[1]  The statute generally provides that a magistrate judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  The statute also enumerates certain other circumstances requiring a judge to disqualify himself.  *Id.* at § 455(b)(1)-(5).  It appears that Plaintiff's primary complaint is that Judge Weigle is biased towards Defendants in this action.  Plaintiff may thus be relying on either subsection (a) or subsection (b)(1).

The standard under subsection (a) is objective and requires the Court to ask "whether an objective, disinterested lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt about the judge's impartiality."  *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotation marks omitted).  In the Eleventh Circuit, "it is well settled that the

---

[1] 28 U.S.C. § 144 also governs recusal, and Plaintiff appears to rely on this section as a basis for his motion.  Section 144 requires the moving party to file an affidavit stating that the judge has a personal bias or prejudice against the plaintiff or defendant, and the affidavit must provide facts and reasons for the belief that bias or prejudice exists.  28 U.S.C. § 144.  The statute also requires that the affidavit must be "accompanied by a certificate of counsel of record stating that it is made in good faith."  *Id.*  Plaintiff has not filed an affidavit or a certificate, and these requirements are strictly enforced.  *See, e.g., United States v. Perkins*, 787 F.3d 1329, 1343 (11th Cir. 2015) (finding that the court did not abuse its discretion by denying litigant's pro se motion for recusal under 28 U.S.C. § 144 because the affidavit did not meet the statute's procedural requirements); *see also Guthrie v. Wells Fargo Home Mortg.*, Civil Action No. 1:13-CV-4226-RWS, 2015 WL 1401660, at *2 (N.D. Ga. Mar. 26, 2015) (collecting cases and finding that "[i]n light of the mandatory and automatic nature of recusal under [§ 144], its potential for abuse, and the availability of other statutory mechanisms pursuant to which an unrepresented litigant may seek the recusal of a federal judge, the absence of [a good faith] certificate has proven fatal to even the § 144 motions of *pro se* litigants").  As such, the Court will assume that Plaintiff intended to proceed solely under § 455.

allegation of bias must show that the bias is personal as distinguished from judicial in nature." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (internal quotation marks and citation omitted) (per curiam). As a result, "a judge's rulings in the same or a related case are not a sufficient basis for recusal," except in rare circumstances where the previous proceedings demonstrate pervasive bias and prejudice. *Id.*; *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute [a] valid basis for a bias or partiality recusal motion."); *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990) ("[The bias] must derive from something other than that which the judge learned by participating in the case."). In this case, Plaintiff has not pointed to any specific facts showing that any sort of extrajudicial bias existed, nor has Plaintiff demonstrated that Judge Weigle's rulings exhibit "such a high degree of . . . antagonism as to make fair judgment impossible." *See Liteky*, 510 U.S. at 555. It is clear that "[r]epeated rulings against a litigant, no matter how erroneous and how vigorously and consistently expressed, are not a basis for disqualification of a judge on the grounds of bias and prejudice," *see Maret v. United States*, 332 F. Supp. 324, 326 (E.D. Mo. 1971), and Plaintiff's theory that Judge Weigle is treating him differently than another *pro se* inmate making similar claims is undercut by Plaintiff's failure to differentiate between the procedural postures of the cases he is comparing, as noted in section I, supra.

28 U.S.C. § 455(b)(1) requires disqualification where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" "Recusal under this subsection is mandatory, because 'the

potential for conflicts of interest are readily apparent.'" *Patti*, 337 F.3d at 1321 (quoting *Murray v. Scott*, 253 F.3d 1308, 1312 (11th Cir. 2001)). Again, Plaintiff has failed to establish any personal or pervasive bias on the part of Judge Weigle, and Plaintiff also fails to identify any specific "disputed evidentiary facts" of which Judge Weigle has knowledge. Any knowledge gained through the course of a judicial proceeding is not a "disputed evidentiary fact" that requires recusal. *United States v. Bailey*, 175 F.3d 966, 969 (11th Cir. 1999) (per curiam). Instead, knowledge of disputed evidentiary facts must be gained through an extrajudicial source to warrant recusal. *See id.* Plaintiff has not asserted that such knowledge exists here.

In sum, Plaintiff's contentions that Judge Weigle has not ruled in his favor are not alone sufficient to merit recusal, and Plaintiff has also failed to show that Judge Weigle harbors the type of pervasive bias or prejudice against Plaintiff that would otherwise require recusal. Plaintiff's motions for recusal (ECF No. 66, 76) are therefore **DENIED.**

### III.    Motion to "Access Authorities"

Plaintiff next seeks an order requiring Defendants "to provide him access to all authorities cited in the Magistrate's December 29, 2017 Report & Recommendation," or, "alternatively, for the court to do the same[.]" Mot. Access Authorities 1, ECF No. 72. In his motion, Plaintiff contends that he "currently has no law library access because Defendants' own SOP requires them to maintain a satellite law library for the G.S.P. lockdown unit, but they are not doing so." *Id.* at 2. As a result, Plaintiff contends that "he does intend to file objections to the R&R, but he is unable to do so because he does not have access to the authorities cited in the R&R, and is unable to 'research and

formulate rebuttals to authorities cited in' . . . the R&R, . . ., or to show how the cases cited by the R&R are distinguishable or inapplicable." *Id.* (citing *Daker v. Humphrey*, 294 Ga. 504 (2014) and *Knop v. Johnson*, 977 F.2d 996 (6th Cir. 1992)).

The Court acknowledges that Plaintiff has complained on several occasions about the failure of the Georgia State Prison ("GSP") to establish a satellite law library for its lockdown prisoners, including in his Amended Complaint in this case. *See id.* at 2. In his Amended Complaint in this case, however, Plaintiff avers that he has at least some access to legal materials: Plaintiff is permitted to submit a request for case authorities to prison officials, subject to certain limitations.[2] Am. Compl. 65-66, ¶ 333, ECF No. 61. Plaintiff does not mention this policy in his motion seeking access to case authorities; nor does he contend that he requested any of the case authorities he now seeks and was subsequently denied access thereto.

Moreover, Plaintiff provides no specific factual details showing how any limitations on his access to legal materials have affected his ability to prosecute this case, or any of the other dozens of cases, appeals, or petitions he has filed since he was confined to the GSP lockdown unit in March of 2016. *See* Mot. Access Authorities 2, ECF No. 72. Plaintiff has filed more than sixty cases, appeals, or petitions in the federal court system alone since April 1, 2016. *See* PACER Case Locator Search, https://pcl.uscourts.gov/pcl/pages/search/findPartyAdvanced.jsf (search "Daker,

---

[2] Specifically, Plaintiff states he must know the statute or case citation for the authorities he is requesting, the prison librarian will not assist him in finding authorities for which he does not have this information, and he is permitted to receive only five copies of cases or statutes every two weeks. Am. Compl. 65-66, ¶ 333, ECF No. 61.

Waseem" in "Advanced Party Search" and limit "Date Range" to cases filed after April 1, 2016). In at least some of those cases, Plaintiff has filed extensive briefing replete with legal authority. For example, Plaintiff's forty-plus page brief in *Daker v. Poff* discusses and distinguishes various cases cited by the magistrate judge in the order for which Plaintiff moved for reconsideration and cites numerous additional cases in support of his positions. *See, e.g.,* Pl.'s Mot. Reconsideration, ECF No. 39 in *Daker v. Poff*, 4:16-cv-00158-JRH-GRS (S.D. Ga. Jul. 10, 2017). Likewise, an appellate brief filed by Plaintiff in *Daker v. Head* cited more than fifty cases, eight different statutes, and several other authorities. *See* Brief of Plaintiff-Appellant, *Daker v. Head*, Case No. 14-13257 (11th Cir. June 27, 2017) (filed prior to appointment of counsel); *see also Daker v. Warren*, No. S16A1675, 2016 WL 7364842 (Ga. June 26, 2016) (appellate brief filed *pro se* in Georgia Supreme Court containing dozens of case citations). Indeed, in his motion to access court authorities in this case, Plaintiff cites to three different cases from three different courts—a Georgia state court, the Sixth Circuit Court of Appeals, and a federal district court in Michigan. Mot. Access Authorities 1, ECF No. 72. And after filing his motion to access case authorities in this case, he has managed to file five additional motions which contain legal argument supported by citations to case law. Plaintiff's filings thus demonstrate that Plaintiff has had ample access to a broad range of legal authorities, even while on lockdown.

In sum, Plaintiff has not sufficiently demonstrated that the lack of a satellite law library, standing alone, has prevented him from prosecuting this case or that he has affirmatively been denied access to the authorities he requests in his motion. Plaintiff

neglects to explain any efforts he has made to obtain access to the authorities he seeks in this case via the policies he admits are in place at GSP, including documenting which authorities he requested, the dates he requested such authorities, and any responses by prison officials to those requests. Plaintiff's motion (ECF No. 72) is therefore **DENIED**.

### IV.    Motion for Copies of Court Documents

Plaintiff next seeks copies of various court documents for his use in preparing objections, appeals, and "future pleadings in this court or in the Southern District." Mot. Copies 1, ECF No. 75. Plaintiff alleges that Defendants "refuse to provide Plaintiff with access to photocopies in the absence of a court order" and that he is unable to use carbon paper provided by Defendants because he cannot press firmly enough to make a legible imprint due to carpal tunnel syndrome and nerve damage to his hands. *Id.* at 2. Plaintiff also states that he only receives thirty pages of paper per week, "which is <u>not</u> enough to enable Plaintiff to <u>both</u> file legal documents with the courts <u>and</u> to keep a copy for his own records." *Id.* Plaintiff states that "[a]s a result, Plaintiff has been often forced to file most of his legal documents in the courts without being able to make a copy thereof for his own records." *Id.* Plaintiff further contends that absent copies of these documents, he is unable to (1) determine whether any of the claims made in this case are duplicative of claims filed previously, (2) "explain why his claims here are not raised maliciously," or (3) object to the Magistrate Judge's recommendation. Mot. Copies 5, ECF No. 75.

Plaintiff is simply not entitled to free copies of pleadings, motions, orders, or any other papers filed in this case. The Eleventh Circuit "has never held that a prisoner's right of access to the courts entitles a prisoner-plaintiff, even one proceeding *in forma*

*pauperis*, to free copies of court documents, including his own pleadings." *Jackson v. Fla. Dep't of Fin. Servs.*, 479 F. App'x 289, 292-93 (11th Cir. 2012) (per curiam); *see also Harless v. United States*, 329 F.2d 397, 398-99 (5th Cir. 1964) (per curiam) ("The statutory right to proceed *in forma pauperis* does not include the right to obtain copies of court orders, indictments, and transcript of record, without payment therefor, for use in proposed or prospective litigation.").[3]  The Court also observes that Plaintiff's most recent submissions to the Court are typewritten and do not appear to have been mailed directly from GSP.  *See* Attach. 1 to Mot. Recusal 1, ECF No. 76-1 (designating "origin" zip code as 29650).  This fact calls into question whether Plaintiff has the ability to obtain paper and/or copies via some other source.

Plaintiff's contention that he does not have access to his previous complaints or know their contents also rings hollow given the Magistrate Court's finding that the Amended Complaint duplicates significant portions of Plaintiff's previous filings verbatim.  Report & Recommendation 6-7, ECF No. 64.  The documents filed after Plaintiff filed his "motion to access" also duplicate portions of the Amended Complaint verbatim, further belying Plaintiff's claim that he does not have access to copies of his previously-filed documents.  *Compare, e.g.,* Am. Compl. 8-11, ¶¶ A.19-37, ECF No. 61

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

*with* Affidavit 7-10, ¶¶ C.26-44, ECF No. 83.[4]  Plaintiff further acknowledges that "it is entirely conceivable that some but not all claims" in his cases may "overlap and are in fact duplicative," but he explains that "this problem is attributable to Plaintiff's lack of access to a copy of [his complaints]."  Mot. Copies 5, ECF No. 75.  In an affidavit filed after his motion for copies, however, Plaintiff is now able to place precise date ranges on his various complaints, asserting, for example, that in this case he intended to challenge only the "February 5 and 20, and March 9 and 20, 2015 uses of force and other adverse actions taken against him in *2015*."  Aff. 9, n.1, ECF No. 83 (emphasis in original).

Plaintiff's ability to incorporate details from his complaints and other filings before the courts—when it suits his purposes—supports the Court's conclusion that Plaintiff does not necessarily need these documents to formulate more complete objections or for any other purpose.  In addition, the Court is reluctant to grant Plaintiff copies of the documents he seeks without providing the Georgia Department of Corrections an opportunity to respond to Plaintiff's allegations, particularly since GDC prison officials contend that Plaintiff is confined to the Tier program at GSP because a sweep of Plaintiff's cell in March of 2016 revealed that Plaintiff had been misusing his legal documents.  Specifically, Plaintiff allegedly "compiled stacks of plain legal forms, 1983 actions, and cut out the center of them and was using them to hide cell phones and was also using his legal materials to store sharp instruments and illegal contraband."  Hr'g Tr. 14, ECF No. 234 in *Daker v. Comm'r*, Case No. 5:12-cv-00459-CAR-MSH

---

[4] Plaintiff specifically requests a copy of the Amended Complaint in this case, contending that he "only had two (2) copies and he filed one in the Middle District . . . and the other in the Southern District[.]"  Mot. Copies 7, ECF No. 75.

(M.D. Ga. Aug. 15, 2016). Plaintiff's motion for copies (ECF No. 75) is **DENIED** at this time. As noted previously, however, Plaintiff will be given fourteen (14) additional days from the date shown on this Order to supplement his Objections if he so desires.

### V. Additional Pending Motions

Plaintiff also has pending before the Court a motion to proceed *in forma pauperis* (ECF No. 62); an "emergency" motion to subpoena evidence or order preservation of evidence (ECF No. 63); five motions for summary judgment (ECF Nos. 55, 59, 77, 78, 79); a motion to sever and un-consolidate cases (ECF No. 67); a motion to vacate the order of consolidation in Case No. 5:17-cv-188 (ECF No. 68); a motion for reconsideration (ECF No. 70); two motions to withdraw his amended complaint (ECF Nos. 71, 74); and a motion to amend (ECF No. 82).

Plaintiff's motion to proceed *in forma pauperis* (ECF No. 62) and his "emergency" motion were both originally filed in Case Number 5:17-cv-188, prior to that case's consolidation into the above-captioned action. Because the question of whether Plaintiff may proceed *in forma pauperis* in the above-captioned action, Case Number 5:15-cv-88, is still open, and because Plaintiff will only be required to pay one filing fee in these consolidated cases, Plaintiff's motion to proceed *in forma pauperis* in Case Number 5:17-cv-188 (ECF No. 62) shall be **terminated as MOOT**. *See* 28 U.S.C. § 1915(b)(1) (requiring prisoner "to pay the full amount of a filing fee" even if prisoner "brings a civil action or files an appeal in forma pauperis").

The Court **DENIES** Plaintiff's "emergency" motion (ECF No. 63) at this time. In this motion, Plaintiff seeks an "emergency subpoena for production of evidence, or

alternatively, to order Defendants to preserve evidence," namely, surveillance videos that Plaintiff contends will show a use-of-force incident involving Plaintiff on May 4, 2017. Emergency Mot. 1, ECF No. 63. Plaintiff states that the surveillance videos "are usually only preserved for 1-2 months, after which they are destroyed/deleted." *Id.* The Court finds that presently, the facts are too undeveloped to warrant the relief sought by Plaintiff. If it is found at a later stage in this litigation that Defendants have destroyed or significantly altered evidence they had a duty to preserve, then Plaintiff would be free to move to address the issue at that time. *See, e.g., Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (spoliation of evidence can result in sanctions including dismissal, exclusion of certain evidence, or adverse jury instructions).

The Court **DEFERS** ruling on each of Plaintiff's remaining pending motions, as well as the Magistrate Judge's Report and Recommendation, until the time during which Plaintiff may supplement his Objections has expired.

### VI. Conclusion

For the foregoing reasons, the Court **DENIES** (1) Plaintiff's motion for appointed counsel (ECF No. 69); (2) Plaintiff's motions to recuse Magistrate Judge Weigle (ECF No. 66, 76); (3) Plaintiff's motion to access authorities (ECF No. 72); (4) Plaintiff's motion for copies (ECF No. 75); and (5) Plaintiff's pending "emergency" motion (ECF No. 63). Plaintiff's motion for leave to proceed *in forma pauperis* in Case Number 5:17-cv-188 (ECF No. 62) shall also be terminated as moot. Plaintiff shall have **FOURTEEN (14) DAYS** from the date of this Order to provide any supplemental objections to the

Magistrate Judge's Recommendation. The Court will defer ruling on Plaintiff's remaining pending motions until the time for supplementation has expired.

**SO ORDERED** this 16th day of March, 2018.


S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT